# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WOOD, | ) | CASE NO. 1:13CV1669 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| LERNER SAMPSON & ROTHFUSS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions: the motion to dismiss filed by defendant Lerner Sampson & Rothfuss ("LSR") pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 14), and the joint motion for judgment on the pleadings filed by defendants Federal Home Loan Mortgage Corp. ("Freddie Mac") and CitiMortgage, Inc. ("CMI") pursuant to Fed. R. Civ. P. 12(c) (Doc. No. 17). Both motions are fully briefed and ripe for determination. For the reasons set forth herein, both motions are granted and this case will be dismissed.

## I. BACKGROUND

On August 1, 2013, plaintiff John Wood ("plaintiff" or "Wood") filed his complaint against LSR, CMI, and Freddie Mac, alleging violations of the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. §§ 1692-1692p. (Doc. No. 2 ["Compl."].)[1] The allegations of the complaint arise out of a foreclosure action filed by LSR, on behalf of CMI, on June 14,

---

[1] Although this action was initiated on August 1, 2013, only one page of the complaint was uploaded. (Doc. No. 1.) About two hours later, the full complaint was uploaded. (Doc. No. 2.) However, that document was not signed. A signed copy of the complaint was finally docketed on August 5, 2013, although a manual time-stamp on that document states it was filed on August 1, 2013. (Doc. No. 4.) The Court would prefer to use Doc. No. 4 as the official complaint; however, that document is missing the page containing ¶¶ 34-44. Therefore, due to these various filing errors, the Court is treating Doc. No. 2 as the complaint.

2013, in the Cuyahoga County Court of Common Pleas. Plaintiff Wood was one of the defendants in that foreclosure action. (Doc. No. 14-1 ["Forecl. Compl."]; Compl. ¶ 14.)[2] The foreclosure action alleged that CMI was "in possession of, and entitled to enforce a note executed by [Wood]" and payable to the lender, ABN AMRO Mortgage Group, Inc. (Forecl. Compl. ¶ 1.) It further alleged that payment of the note was "secured by a mortgage," and that CMI is "successor by merger to ABN AMRO Mortgage Group, Inc." and "entitled to have said mortgage foreclosed." (*Id.* ¶¶ 4, 5.) Copies of the defaulted note, the mortgage, and the relevant merger documents were attached to the foreclosure complaint.

In his complaint filed in this Court, Wood alleges that the note secured by the mortgage was in the amount of $112,000, and was to refinance the purchase of his principal residence. (Compl. ¶¶ 2, 4, 5, 6.) As such, it was a debt covered by the Act. (*Id.* ¶ 7 [citing 15 U.S.C. § 1692a(5)].) The complaint further alleges that, in July 2007, the note and mortgage were sold to Freddie Mac. (*Id.* ¶ 8.) On September 1, 2007, CMI merged with ABN AMRO Mortgage Group, Inc. and "received the rights to service the mortgage loan that formerly belonged to AMRO." (*Id.* ¶¶ 9, 10.)

The complaint alleges that LSR was the law firm representing CMI in the foreclosure action and, as such, is a "debt collector" within the meaning of the Act. (Compl. ¶¶ 11-13 [citing 15 U.S.C. § 1692a(6)].) The foreclosure action was allegedly "an attempt to collect a debt." (*Id.* ¶ 14.) Wood asserts that LSR violated the Act in three ways: by failing to provide a

---

[2] Although the complaint here makes reference to the foreclosure action (*see* Compl. ¶ 14), no copy of that action is attached; however, a copy is attached to LSR's Rule 12(b)(6) motion as Ex. A. The Court's consideration of Ex. A does not necessitate conversion of the motion to one for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

Notice of Debt that comported with 15 U.S.C. § 1692g(a)(2) & (3) (*id.* ¶ 15); by using a "false, deceptive or misleading representation in connection with the collection of [the] debt, including a false representation of the ownership of the debt," in violation of 15 U.S.C. § 1692e(2) (*id.* ¶ 18); and by using "unfair or unconscionable means to attempt to collect any debt" in violation of 15 U.S.C. § 1692f (*id.* ¶ 20).

The complaint further alleges that "[t]o allow [defendant CMI] to file a foreclosure suit and thereby collect on the mortgage loan in [CMI's] name, Freddie Mac sent the Note and Mortgage to [defendants CMI and LSR]." (Compl. ¶¶ 33, 53.) It asserts that Freddie Mac and CMI committed the same three violations of the Act with respect to failure to give proper Notice of Debt (*id.* ¶¶ 36, 56), use of a false, deceptive, or misleading representation in connection with collection of a debt (*id.* ¶¶ 38, 58), and use of unfair or unconscionable means in connection with collection of a debt (*id.* ¶¶ 40, 60).

## II. DISCUSSION

A.     The Fair Debt Collection Practices Act

Congress enacted the Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute is "extraordinarily broad" and addresses what Congress "considered to be a widespread problem[.]" *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). When interpreting the Act, the court should "begin with the language of the statute itself . . . ." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999) (citation omitted). The court "must consider the language and design of the statute as a whole as well as the specific provision at issue." *Id.*

3

The Act distinguishes between "creditors" and "debt collectors." A "creditor" is defined as:

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. 1692a(4). "Debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> * * *
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.
>
> * * *

15 U.S.C. § 1692a(6); *see also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (the Act also "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation[ ]").

As to a specific debt, the two terms are mutually exclusive. As explained by the Sixth Circuit:

> The distinction between a creditor and a debt collector lies precisely in the language of [15 U.S.C.] § 1692a(6)(F)(iii). For an entity that did not originate the

debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.[3] The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106-8 (6th Cir. 1996); *see also Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). This interpretation of the Act is supported by Congress's intent in passing it.

> [3] Our analysis of § 1692a(6) parallels the holdings of other circuits that have addressed the issue. *See, e.g., FTC v. Check Investors, Inc.,* 502 F.3d 159, 171-73 (3d Cir. 2007); *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003) ("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.").

*Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (footnote in original); *see also Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003) (considering it "well-settled" that "a creditor is not a debt collector for the purposes of the [Act] and creditors are not subject to the [Act] when collecting their accounts"), cited with favor by *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007).

**B.   Joint Motion of Freddie Mac and CMI for Judgment on the Pleadings (Doc. No. 17)**[3]

   Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c).[4] The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998)).

---

[3] Plaintiff filed separate responses to this motion as regards CitiMortgage (Doc. No. 19) and Freddie Mac (Doc. No. 20); these defendants filed a joint reply (Doc. No. 22).

[4] CMI and Freddie Mac both filed answers to the complaint. (Doc. Nos. 15 and 16, respectively.)

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir.1991) (citation omitted).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC,* 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

In order for the complaint in this case to withstand the joint motion of CMI and Freddie Mac, it must establish that they are "debt collectors" within the meaning of the Act and, therefore, subject to the Act.

Here, the complaint alleges the following:

1. ABN AMRO Mortgage Group, Inc. originated a debt evidenced by a Note and Mortgage, both signed by plaintiff. (Compl. ¶¶ 24, 27, 44, 47.)

2. The debt evidenced by the Note and Mortgage was sold to Freddie Mac in or before July 2007. (Compl. ¶¶ 30, 50.)

3. ABN AMRO Mortgage Group, Inc. merged with CMI effective September 1, 2007. (Compl. ¶¶ 31, 51.)

4. CMI, either directly or through its predecessor, has serviced the debt since the debt's origination. (Compl. ¶¶ 32, 52.)

5. CMI filed a state court foreclosure action against Wood on June 14, 2013. (Compl. ¶ 14.)

There is no allegation in the complaint that the loan was in default prior to either July 2007 or September 2007. Therefore, as a general matter, Freddie Mac is a "creditor" entitled to collect its debt, and CMI, as the loan servicer, can stand in Freddie Mac's shoes to collect the debt since CMI's predecessor originated the loan and, further, since the loan was not in default at the time CMI became the servicer.

In his opposition brief relating to Freddie Mac (Doc. No. 20), plaintiff attempts to establish that Freddie Mac is a "debt collector" by relying on the so-called "false name" exception in § 1692a(6). He points to his allegation that "[s]ince *creditor* Freddie Mac, in the process of collecting its own debt, used the name of [CMI] to indicate that [CMI] is attempting to collect the debt, Freddie Mac is a *debt collector* per [15 U.S.C. §] 1692a(6)." (Compl. ¶ 35, emphases added.) In his opposition brief relating to CMI (Doc. No. 19), plaintiff points to the allegations in his complaint that CMI, "as a mortgage loan servicer regularly collects or attempts to collect debts owed another, as in this case, and is a debt collector per [15 U.S.C. §] 1692a(6)." (Compl. ¶ 55.)

Section 1692a(6) sweeps into the definition of "debt collector" "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a *third person* is collecting or attempting to collect such debts." (emphasis added). Plaintiff misconstrues this definitional section of the statute. As pointed out above, case law makes clear that a "creditor" is not a "debt collector" and, therefore, is not subject to the Act. A loan servicer (such as CMI) who receives a loan for servicing before it is in default (as in this case) stands in the shoes of a creditor and is also not a "debt collector." Here, there is no "third person" collecting the debt; Freddie Mac and CMI are essentially the same (i.e., "creditors") for purposes of the Act.

Under the terms of the Act and the allegations of plaintiff's own complaint, neither CMI nor Freddie Mac is a "debt collector." Therefore, neither is subject to the Act.

Freddie Mac and CMI are entitled to judgment on the pleadings, and their joint motion for judgment on the pleadings (Doc. No. 17) is granted.

**C.     LSR's Motion to Dismiss (Doc. No. 14)[5]**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to

---

[5] Plaintiff filed a response to the motion (Doc. No. 18), and LSR filed a reply (Doc. No. 20). LSR also filed a notice of supplemental authority (Doc. No. 23), to which LSR responded (Doc. No. 24).

relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### 1. Alleged violation of § 1692g

Section 1692g(a) of the Act provides, in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

> \* \* \*
> (2)  the name of the creditor to whom the debt is owed;
> (3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector[.]

Plaintiff's claim under this section of the Act is that LSR, a debt collector, failed to provide a Notice of Debt that contained both the name of the creditor to whom the debt was owed and an opportunity to dispute the validity of the debt. (Compl. ¶ 15.)

LSR does not deny that it is a "debt collector." Rather, it argues that this claim is defective because "it fails to include the sole factual predicate necessary to allege a violation[,]" (Motion at 76), namely, that there was an "initial communication." (*Id*. at 76-77). The complaint seems to suggest that the foreclosure lawsuit filed by LSR on CMI's behalf was the "initial communication." LSR asserts, however, that the statute itself clearly provides: "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." 15 U.S.C. § 1692g(d); *see also Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n.3 (6th Cir. 2007) (noting that § 1692g(d) was revised to resolve a circuit split as to whether a summons and complaint constituted an "initial communication") (citing cases).

Plaintiff's only response is that the "[d]efendant cites no case law *for the proper application of that provision*." (Response at 157, emphasis added.) However, "[t]he starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). There is no need for case law where, as here, the statutory provision is unambiguous.

Plaintiff further argues that "the purpose of pleading is not to state every fact that applies to a [c]omplaint, but such as are sufficient to put a [d]efendant on notice of the nature of the suit against it." (Response at 157 [citing *Davis v. Trans Union, LLC*, 526 F. Supp. 2d 577 (W.D.N.C. 2007)].) Although true, that does not excuse a plaintiff from actually stating a claim for relief. Where, as here, an entire factual element of a cause of action is lacking, there is no

10

refuge in arguing "notice pleading."[6] Plaintiff has not alleged that LSR made *any* initial communication to him, except the filing of a foreclosure complaint on behalf of CMI. That pleading, under the unambiguous terms of the statute, is not to be treated as an "initial communication" for purposes of the notice requirements of the Act.

Plaintiff's citation to *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 455 (6th Cir. 2012) for the proposition that "mortgage foreclosure is debt collection under the Act[,]" is unavailing for purposes of the § 1692g(a) claim. Although mortgage foreclosure is "debt collection," and although a "debt collector" must provide certain kinds of notice in its "initial communication with a consumer in connection with the collection of any debt," or within five days thereafter, 15 U.S.C. § 1692g(a), the statute is perfectly clear that a legal pleading is *not* an "initial communication." 15 U.S.C. § 1692g(d). None of the other cases cited by plaintiff offer any support for his position.[7]

---

[6] Plaintiff asserts that *Davis* held: "Without the benefit of discovery at the pleading stage of litigation, the Plaintiff would presumably lack the knowledge [required by the Act], and adopting such a burdensome requirement would be contrary to the goals of notice pleadings [sic]." (Response at 157-58, quoting *Davis*, 526 F. Supp. 2d at 585, alteration in Response.) In *Davis*, plaintiff filed a complaint under the Fair Credit Reporting Act and the Fair Debt Collection Practices Act alleging that defendant Sterling and King, Inc. (a furnisher of credit information) falsely reported to defendant Trans Union LLC that plaintiff was indebted on a past due account and that the account was in collections. Plaintiff further alleged that Trans Union, a credit reporting agency, had failed to properly investigate before placing this negative information on plaintiff's credit report. Sterling and King moved under Rule 12(b)(6) to dismiss the complaint against it, arguing that the complaint did not specify that Trans Union had notified Sterling and King within five days of receiving notice of the fact that plaintiff disputed the debt. The district court rejected that argument because the complaint did allege that Trans Union had notified Sterling and King, but, due to lack of discovery, plaintiff would have no way of knowing whether that notice occurred within the required five days. *Davis*, 526 F. Supp. 2d at 585. *Davis* is distinguishable from the instant case. In *Davis*, plaintiff needed discovery to learn whether Trans Union had notified Sterling and King within five days, and the complaint gave sufficient notice of the nature of the claim. *Id.* In the instant case, plaintiff was personally in a position to know whether he, himself, had received an "initial communication" from LSR (other than the foreclosure action, which does not constitute an initial communication under the Act). There is no need for discovery to adequately plead this cause of action under the Act.

[7] Plaintiff cites three cases for the general proposition that "a foreclosure complaint is not conclusively presumed entirely excluded as a first communication, and that any filing by a debt collector attorney in a foreclosure action after the pleadings will trigger the Notice of Debt, a strict liability obligation, and that discovery may be needed to determine the initial communication, or evidences [sic] outside the pleadings needed to invoke the 'formal pleading' exception, so that Rule 12(b)(6) dismissal on a pleading argument is inappropriate." (Response at 159 [citing *Ostrander v. Dentistry by Dr. Kaplansky, PLLC*, No. 07-CV-852-JTC, 2010 WL 1407300 (W.D.N.Y. Mar. 30,

The Court concludes that plaintiff has failed to state a claim for relief under 15 U.S.C. § 1692g(a) against defendant LSR.

### 2. Alleged Violations of §§ 1692e(2) and 1692f

Section 1692e of the Act provides, in relevant part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Act specifies that it is a violation to make a "false representation" of "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A).

Somewhat similarly, section 1692f of the Act provides, in relevant part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

In his complaint, plaintiff alleges that, in the foreclosure complaint, LSR, acting as a debt collector, "indicated that the mortgage loan belonged to [CMI] by merger," and that "[CMI] is entitled to have said mortgage foreclosed." (Compl. ¶¶ 17, 19 [citing Forecl. Compl. ¶ 5].) LSR did so, plaintiff alleges, knowing "that Freddie Mac was then the succeeding creditor on the mortgage loan by sale from ABN AMRO to Freddie Mac in or before July, 2007." (Compl. ¶ 16.) Plaintiff alleges that this was "false, deceptive and/or misleading," (*id*. ¶ 17) and "an unfair and/or unconscionable means to attempt to collect a debt," (*id*. ¶ 19), "meant to deceive the court

---

2010) (where the "formal pleading" exception did not apply because an allegation in the complaint that plaintiff received a "demand letter" from Dr. Kaplansky's lawyer triggered the § 1692g(a) duties and was sufficient to state a claim); *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 4010257 (E.D. Tenn. Aug. 5, 2013) (where the complaint alleged that plaintiff was served with a civil warrant with an attached affidavit that failed to make the requisite disclosures; the court found that the affidavit itself was not a "formal pleading"); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358 (D. Md. 2010) (where interrogatories not containing the statutory notices that were served as part of a lawsuit to collect a debt were found not exempt because they were not "formal pleadings")].) None of these cases stands for the proposition that a plaintiff's complaint can be bare-bones until he has time to conduct discovery into whether he, himself, received an initial communication (other than a foreclosure complaint, which is clearly not an "initial communication" under the explicit terms of the Act). The fact of receipt, or not, of an initial communication is already within the first hand knowledge of a plaintiff filing a complaint under the Act. Furthermore, in the instant case, there is no allegation of a demand letter, an independent affidavit, or interrogatories that might bring it within the facts of any one of the three cited cases.

and [p]laintiff into a belief in [CMI] as being the creditor and one entitled to collect a debt in its own right and to enforce the mortgage." (*Id*. ¶ 17; *see also id*. ¶ 19.) He further alleges that a debt collector is not permitted to make "a false representation of the ownership of any debt, per 1692e(2)." (*Id*. ¶ 18.)

       The gravamen of these two claims against LSR is that Freddie Mac, as the alleged "owner" of Wood's loan, should have been the foreclosure plaintiff, not CMI, the holder of the note and mortgage at the time the foreclosure complaint was filed. Wood thereby challenges "a frequent practice of the mortgage industry wherein the creditor tries to collect on its note and mortgage without revealing itself as creditor by having the servicer collect as if the creditor." (Compl., Introduction.)

       In its motion to dismiss, LSR correctly argues that, under Ohio law, "the current holder of the note and mortgage is entitled to bring a foreclosure action against a defaulting mortgagor even if the current holder is not the owner of the note and mortgage." (Motion at 79 [quoting *ABN AMRO Mortg. Group, Inc. v. Evans*, No. 98777, 2013 WL 1696728, at *5 (Ohio Ct. App. Apr. 18, 2013)].) The court in *Evans* specifically noted that ABN AMRO was the servicer and had been receiving payments on the loan the entire time the Evanses had been making them, and that "[t]he sale of the promissory note to Freddie Mac [prior to the filing of the foreclosure action] did not change this." (*Id*. at *6) LSR also points out that Wood acknowledges in his complaint that CMI was the holder of the note and mortgage by virtue of Freddie Mac's having "sent the Note and Mortgage to [CMI and LSR]." (Motion at 79 [quoting Compl. ¶¶ 33, 37, 39, 53, 57, and 59].)

       In opposition to the motion, plaintiff argues that "the law of foreclosure in Ohio [is] of little relevance to whether an FDCPA violation has occurred." (Response at 162.) He

13

argues that whether or not defendant can prevail in a foreclosure action under Ohio law "is irrelevant to whether [d]efendant is trying to collect a debt in a manner forbidden under federal law." (*Id.* at 164.)[8]

At first blush, there is some appeal to plaintiff's argument. The Sixth Circuit has noted that the issue of standing to bring a foreclosure action in Ohio "has [no] bearing on whether misidentifying a creditor is materially misleading under the [Act]." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012).[9] The court has further stated that, even if someone in CMI's position has standing under Ohio law to bring a foreclosure action, "the Act protects the unsophisticated consumer from false statements tending to mislead or confuse[.]" *Id.* at n.2. That said, in his complaint, plaintiff does not allege, or even suggest, that LSR's filing of the foreclosure action on CMI's behalf misled or confused him with respect to his defaulted note and mortgage. *See, e.g., Galati v. Manley Deas Kochalaski LLC*, No. 1:13-CV-2206, 2014 WL 584784, at *4 (N.D. Ohio Feb. 12, 2014) (distinguishing *Wallace* and granting law firm's Rule 12(b)(6) motion because plaintiffs "ha[d] not alleged that they were

---

[8] Plaintiff asserts that, under Ohio law, a "holder" (even if he is a thief) can enforce a note by mere possession of a bearer note. A specially endorsed note can only be enforced by the present payee. These enforcement rules help preserve the negotiability of notes. However, only an "owner" or a "holder in due course" can foreclose on a mortgage that secures the note. Plaintiff points out that one's identity as a "holder" as opposed to an "owner" or "a holder in due course" merely affects the defenses against payment that may be available. (*See* Response at 163.)

[9] In *Wallace*, Washington Mutual Bank filed a foreclosure action wherein it alleged that it was the holder of Wallace's promissory note and delinquent home mortgage. At the time of the filing of the action, the debt had not yet been transferred to Washington Mutual, even though, by the time the foreclosure action was complete, the transfer had been accomplished. Wallace did not respond to the foreclosure notice. A default judgment was entered, and a sheriff's auction of her home was scheduled. Wallace then contacted the Bank's lawyers (who happen to be the same law firm as in the instant case) to arrange to pay off the loan. These attempts were unsuccessful and, although the auction was initially postponed, the home was later sold at auction. Wallace sued the Bank and its lawyers under the Act. She alleged that identifying Washington Mutual as the holder of her note caused her confusion and delay in trying to contact the proper party concerning payment of her loan and resolution of her problem. The district court granted defendant's Rule 12(b)(6) motion, but the court of appeals reversed and remanded, concluding that Wallace "has sufficiently alleged a material misrepresentation that would confuse or mislead an unsophisticated consumer." *Wallace*, 683 F.3d at 328. The court expressly noted that it was not "mak[ing] any findings about the merits of plaintiff's claim under the Act or any defenses that may be raised by Lerner, Sampson." *Id.* It held "only that plaintiff has *alleged sufficient facts* to survive a motion for dismissal on the pleadings." *Id.* (emphasis added).

14

confused about who owned their debt as a result of M&T filing the foreclosure complaint[ ]");[10] *see also Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498, 505 (N.D. Ohio 2011) (noting that "[i]n the Sixth Circuit, a false statement that is not deceptive under the objective 'least sophisticated consumer' test is not a violation of the FDCPA[]") (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 401-02 (6th Cir. 1998)). Nor, for that matter, does plaintiff deny that he was in default. Rather, he merely asserts that he "has been damaged by [LSR] by *having to defend against a false Suit* by one who has used deceptive and unfair collection practices in bringing suit, an attempt to collect a debt." (Compl. ¶ 21, italics added.)

A close review of the foreclosure complaint, particularly paragraph 5 (which is specifically relied upon by plaintiff), wherein LSR allegedly "indicated that the mortgage loan belonged to [CMI] by merger," (Compl. ¶ 17), reveals no such language. The foreclosure complaint states in its entirety:

### COUNT ONE

> 1. Plaintiff [CMI] is in possession of, and entitled to enforce a note executed by the defendant, John Wood aka John Henry Wood. A copy of the note is attached hereto as Exhibit A.
>
> 2. Defendant defaulted under the terms of the note, and plaintiff has performed all conditions precedent to acceleration and has accelerated the debt.
>
> 3. There is due to plaintiff from the defendant, John Wood aka John Henry Wood, upon the note, the sum of $108,747.27, interest at the rate of 6.6250% per year from September 1, 2009, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges as allowed by law.

---

[10] In *Galati*, however, the court also noted two other facts that might distinguish it from the instant case. First, the plaintiffs in *Galati* "ha[d] not identified any other party to whom they might owe their debt, if not to M&T Bank." *Galati*, at *4. Here, plaintiff has identified Freddie Mac as the entity to whom he would owe his debt. (Compl. ¶ 8.) Second, the court in *Galati* noted that *Wallace* "did not consider whether or not the plaintiff had sufficiently alleged that the defendant debt collector knew that its client did not own the debt at the time of the state foreclosure action." *Id*. Here, plaintiff has explicitly alleged that LSR possessed such knowledge at the time it filed the foreclosure action on behalf of CMI. (Compl. ¶ 16.)

COUNT TWO

      4.      Plaintiff incorporates the allegations of Count One and further states that the aforesaid note is secured by a mortgage, a copy of which is attached hereto as Exhibit B, and that said mortgage constitutes a valid first lien upon the real estate described therein.

      5.      The mortgage was filed for record on March 23, 2007, at Instrument No. 200703230005, of the county recorder's records. The conditions of defeasance contained therein have been broken; plaintiff has complied with all conditions precedent; and plaintiff is entitled to have said mortgage foreclosed. CitiMortgage, Inc. is successor by merger to ABN AMRO Mortgage Group, Inc. as evidenced by the merger documentation attached hereto as Exhibit C.

      6.      Plaintiff says that the defendant, Sawana Marie Frazier, may claim an interest in the subject property as the current spouse of the defendant-titleholder, John Wood aka John Henry Wood. Plaintiff states that it cannot currently discover the real name of said defendant.

      WHEREFORE, plaintiff prays for judgment against defendant, John Wood aka John Henry Wood, in the amount of $108,747.27, together with interest at the rate of 6.6250% per year from September 1, 2009, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, that said mortgaged by foreclosed; that said real property may be ordered sold, and that plaintiff be paid out of the proceeds of such sale; for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same.

(Forecl. Compl., Doc. No. 14-1 at 83-85.)[11]

On a motion to dismiss, this Court is not required to accept as true a factual allegation that is clearly *not true*. In his complaint, plaintiff alleges that, in the foreclosure action, LSR "indicated that the mortgage loan belonged to [CMI] by merger[.]" (Compl. ¶ 17.) The Court sees no such allegation in this foreclosure complaint and, therefore, need not take that statement as "true" for purposes of the motion.

---

[11] The Court may take judicial notice of the docket of the foreclosure case in the Cuyahoga County Court of Common Pleas. That docket shows that the foreclosure action remains pending.

There are, however, claims in the foreclosure complaint that CMI is "entitled to enforce" the note and "entitled to have [the] mortgage foreclosed." LSR argues that this is correct, since CMI was the holder of the note and mortgage.[12] Indeed, under Ohio law, "[i]n foreclosure actions, the real party in interest is the current holder of the note and mortgage." *Aurora Loan Servs., L.L.C. v. Louis*, No. L-10-1289, 2012 WL 361988, at *3 (Ohio Ct. App. Feb. 3, 2012).

By plaintiff's own admission, CMI was the holder of the note and mortgage at the time the foreclosure action was filed, having received them from Freddie Mac (Compl. ¶ 33), and was, therefore, entitled under Ohio law to enforce the note and foreclose on the mortgage. The Court cannot perceive how there has been any "false suit," as alleged by plaintiff, that could have been a violation of the Act, at least not as the claim relates to LSR. Plaintiff has not referred the Court to any case law that holds otherwise.[13]

---

[12] Several Ohio statutes are helpful. Ohio Revised Code § 1303.31(A)(1) identifies the "holder of the instrument" as a "person entitled to enforce" the instrument. The "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" Ohio Rev. Code § 1301.201(21)(a). Section 1303.31(B) further clarifies that one might be a "person entitled to enforce" the instrument even though one is "not the owner of the instrument or is in wrongful possession of the instrument."

[13] In fact, the Sixth Circuit has recently affirmed a summary judgment where, *inter alia*, plaintiffs sued a law firm who had represented a financial institution in successfully bringing a foreclosure action against them. Plaintiffs claimed that statements in the foreclosure complaint that the financial institution had a right to foreclose under Ohio law were misrepresentations and materially misleading because the mortgage assignments had been fabricated. The court of appeals reviewed the law of Ohio that gives standing to foreclose to a party who possesses either the note or the mortgage, and determined that, because the financial institution was the holder of a note endorsed in blank, it had the right to enforce the note. The court stated: "On these facts, the defendant did not make materially misleading statements." *Clark v. Lender Processing Servs.*, No. 13-3799, 2014 WL 1408891, at *6 (6th Cir. Apr. 14, 2014). *See also Nationstar Mortg., L.L.C. v. West*, Nos. 25813, 25837, 2014 WL 820008, at *7 (Ohio Ct. App. Feb. 28, 2014) (explaining that, since "a mortgage automatically follows the note it secures[,]" "the transfer of a note automatically results in equitable assignment of a mortgage securing the note."), citing with favor *Bank of Am., N.A. v. Pasqualone*, No. 13AP-87, 2013 WL 6869954, at *7 (Ohio Ct. App. Dec. 31, 2013) (discussing in detail the difference between a debtor's interest in the ownership of a note and a debtor's interest in who has the right to enforce the note).

The court in *Clark* distinguished *Wallace*, stating that (as here) there were no allegations in the complaint that plaintiffs had been misled or confused by anything defendant "said or did in the case." *Id*. The court further rejected plaintiffs' allegation that the defendant's statements were misleading "solely because those statements implied that Deutsche Bank had standing when it did not." *Id.* The court held:

In light of the above, the Court concludes that plaintiff fails to state a claim under 15 U.S.C. § 1692e(2) and further fails to state a claim under 15 U.S.C. § 1692f.

### 3. Summary Conclusion as to Doc. No. 14

For the reasons set forth above, LSR's motion to dismiss under Rule 12(b)(6) is granted.

### III. CONCLUSION

For the reasons set forth, LSR's motion to dismiss (Doc. No. 14) and the joint motion to dismiss of Freddie Mac and CMI (Doc. No. 17) are granted. By separate order, the case will be dismissed.

**IT IS SO ORDERED**.

Dated: August 27, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

> As the *Wallace* court explained, a lender could have standing to foreclose but nevertheless make a misleading statement in the course of trying to collect a debt. But here, where the only misleading aspect of a communication or statement is that the statement implies that the lender has standing to foreclose when it did not, whether or not the lender does in fact have the right to foreclose appears to settle the matter.

*Id.* The same is true here, notwithstanding plaintiff's argument to the contrary. (*See* Doc. No. 24 at 211-12, which, the Court notes, has a decidely disrespectful tone unbecoming plaintiff's counsel, as an officer of the court.)